**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

CODY STEWART, AMY STEWART AND
FAITH STEWART AND CLAYTON STEWART,
MINORS, BY AND THROUGH THEIR NATURAL
GUARDIANS, CODY STEWART AND AMY STEWART          PLAINTIFFS

VERSUS                                           CAUSE NO. 1:18-cv-00053-HSO-JCG

HUNT SOUTHERN GROUP, LLC FKA
FOREST CITY SOUTHERN GROUP, LLC,
FOREST CITY RESIDENTIAL MANAGEMENT, LLC,
UNKNOWN JOHN and JANE DOES A THROUGH M, AND
OTHER UNKNOWN CORPORATE ENTITIES N THROUGH Z   DEFENDANTS

**PLAINTIFFS' RESPONSE TO [195] DEFENDANTS' MOTION TO EXCLUDE THE
OPINIONS AND TESTIMONY OF JOE E. MORGAN, JR.**

COME NOW Plaintiffs, by and through their undersigned counsel of record, Rushing & Guice, P.L.L.C., and files this, their Response in Opposition to [195] Defendants' Motion to Exclude the Opinions and Testimony of Joe E. Morgan, Jr., and would further request the Court permit a hearing or oral argument of this matter pursuant to local rule L.U.Civ.R. (7)(b)(6), and in support thereof would show unto the Court the following:

1.      Plaintiffs herein are a military family who obtained housing in privatized housing located on or around Keesler Air Force Base in Biloxi, Mississippi. This housing was leased from Defendants in their various capacities as owners or managers of the properties and pursuant to the terms of said lease, Plaintiffs' rent was paid through the housing allowance provided pursuant to the compensation plan available to members of the United States military. Plaintiffs resided in said privatized housing during the years of 2014-2015.

2.      Plaintiffs contend that, while residing in the privatized housing, they were exposed to unhealthy conditions and various aspects of mold and mildew and other inadequacies which

1

made the premises uninhabitable and which affected them adversely, and they attribute various symptoms, conditions, and injuries to this exposure.

3. During the course of this litigation, Plaintiffs, through their counsel, retained Joe E. Morgan, Jr., with J. Morgan Consulting, LLC in Madison, Mississippi, as an expert regarding various issues related to construction and the physical structure of the residence. Plaintiffs submitted Mr. Morgan's C.V. to opposing counsel on August 24, 2018, see **Exhibit "A"** attached hereto.

4. Mr. Morgan was initially presented certain documentation as identified below:

> 00-0000 [BATES - 00970 00972] MRP Documents-7.pdf
> 07-032S [BATES - 000S4 - 00066] 2007-03-25 Keesler_Hun_report.pdf
> 07-0611 [BATES - 00219 - 00228] Hunt Building Corp_Section 15800.pdf
> 09-0921 [BATES - 0051 - 00053] 2009-09 BSC Report.pdf
> 10-0801 [BATES - 00980 - 00995] MRP Documents-9.pdf
> 13-0102 [BATES - 00976 - 00977] MRP Documents-8.pdf
> 13-0207 [BATES - 01370 - 01371] 20130207 Keesler Scope Recommendation.pdf
> 13-0214 [BATES - 01372 - 01375] Beta Scope Back-up.pdf
> 13-0415 [BATES - 01369 - 01369] 20130415 Increase Unit Count- Keesler Condensation Prevention Sample Population.pdf
> 13-0422 [BATES - 00193 - 00218] Improvements Contractor's Summary aJ.O.Collins.pdf
> 13-0425 [BATES - 00626 - 00634] 20160513 Change Order 69 Back Up.pdf
> 13-0426 [BATES - 00471 - 00524] Improvements Contractor's Summary b. Kimbel Merch.pdf
> 13-0501 [BATES - 00363 - 00414] Executive Summary.pdf
> 13-1223 [BATES - 00914 - 00916] MRP Documents-2.pdf
> 14-1021 [BATES - 00911 - 00913] MRP Documents.pdf
> 15-0415 [BATES - 00591 - 00596] 20150416 FW Recommended Plan of Attack vs Systemic Mold in Housing.pdf
> 15-1123 [BATES - 00598 - 00608] 20151204 Change Order 67 Back-Up.pdf
> 15-1204 [BATES - 00597 - 00597] Change Order 67-Phase I of Keesler Condensation Scope-attachment change order.pdf
> 15-1208 [BATES - 00609 - 00609] NTP – C0 67_Moisture Remediation Scope_Keesler-.pdf
> 16-0306 [BATFS - 00614 - 00620] 20160306 CO 72 Keesler T-Stats.pdf
> 16-0531 [BATES - 00635 - 00635J] NTP - CO 69_Phase II Moisture Rernediation Scope_Keesler -.pdf
> 16-0901 [BATES - 00189 - 00192] 20160901HSG Condensation POA Memo.pdf

2

      16-1115 [BATES - 00931 - 00935] MRP Documents-3.pdf
      16-1130 [BATES - 00623 - 00625] 20161130 Change Order 70.pdf
      16-1201 [BATES - 009S8 - 00959] MRP Documents-5.pdf
      16-1209 [BATES - 00621 - 006121] Change Order 70 Approval ltr 9 Dec l6.pdf
      17-0119 [BATES - 00149 - 00150] 20190119 Keesler Condensation Progress Update-.pdf
      17-0119 [BATES - 00850 - 00851] 20190119 Keesler Condensation Progress Update-Jan2017WC.pdf
      17-0127 [BATES - 00936 - 009937] MPR Documents-4.pdf
      17-0201 [BATES - 00133 - 00136] 20170201 HMC Response to CODEL.pdf
      17-1214 [BATES - 00622 - 00622] Keesler CO 7614 Dec 17.pdf
      18-0404 [BATES - 00637 - 00639] 20180403 MRP 2018 Sustainable Phase Memo.pdf
      18-0719 [BATES – 00806 – 00810] 20180719 Keesler Condensation Progress Update.pdf

      See Exhibit "C" at pg. 1-3, all attached hereto as **Exhibit "B"** *in globo*.

He was subsequently presented with additional documentation as it was received from the defendants, including floor plans, correspondence, and maintenance records as well as additional photographs of the premises, all attached hereto as **Exhibit "C"** *in globo.*

5.    Following review of these materials and an inspection of one home in the privatized housing area controlled or operated by the defendants, Mr. Morgan reached certain conclusions and made observations which are included in a report dated September 21, 2018, which was submitted to opposing counsel on September 26, 2018, see **Exhibit "D"** attached hereto. Pursuant to Mr. Morgan's report which was submitted within the time limits established by the court, Mr. Morgan indicated that "My opinion at this time is that the moisture problems with the Keesler housing are attributed to the Poor Workmanship/Installation of the HVAC system." In reaching this conclusion, Mr. Morgan identified certain items of information which were obtained from the defendants. "The reports from April 22, 2013 – April 26, 2013 – May 1, 2013 – December 23, 2013 – October 21, 2013 all agree to the fact of faulty, poor installation. […] The early March 25, 2007 report by BSC comments on proper procedures and the fact that they

3

were reviewing materials they had been provided (would assume the materials were the mechanical plan and specs). Hunt Building Corp on June 11, 2007 submitted some design specifications that included some specifcs on how they intended to install the HVAC system." See Exhibit "C" at pg. 3-4, and see Exhibit "B" which contains these items. Based upon review of this documentation and the reports provided by Defendants, Mr. Morgan further stated that there was correspondence in the documentation to the effect that the framing may not have been properly done and did not block off outside air from infiltrating areas that could trap it (such as conditioned areas between floors). "The Forest City May 1, 2013 report states in some units the attic duct distribution layout was not per as-built drawings." See Exhibit "C" at pg. 4. Mr. Morgan's inspection of a house, not the subject of the above-captioned matter, indicated that his observations of that house corroborated the information provided in the reports obtained from Defendants. "My inspection revealed the same observation of improperly installed duct work. There were straps around flex duct hanging from the rafters. The sag was so bad that the duct work was crimped and compressed restricting air flow. Most of the cornice baffles were laying in the insulation very few were installed most of the cornice was blocked with insulation. The HVAC system installed is a 3ton Trane Heat Pump." See Exhibit "C" at pg. 4.

6. Furthermore, the defendants conducted a deposition of Mr. Morgan on March 27, 2019, subsequent to Mr. Morgan receiving additional documentation received by the plaintiffs pursuant to ongoing discovery. His answers in the deposition aligned with his original opinions in that the HVAC system was a primary problem that existed within the residence.  In said deposition, when asked by Defendants what his opinions were on the Stewart residence, Mr. Morgan stated as follows:

> A. Stewart. Overcut penetration, kinked flex duct. They had pictures where

they took the drywall down in the ceiling evidently and duct work was exposed. There were several of them that showed that. I don't know that I noted every one. Extensive draft stop work evidently, because I made a note of extensive. Ridiculous gaps in connections of duct work. There was – I had information or pictures showing me a lot more stained drywall than I had seen before. Choked down connections, 90 degree elbows in ducts, more of the same.

See **Exhibit "E"** at pg. 133.

## MR. MORGAN IS AN EXPERT IN THE FIELD OF CONSTRUCTION QUALIFIED TO GIVE EXPERT TESTIMONY

7. Mr. Morgan is qualified to offer opinions and testimony regarding construction and inspection matters. Mr. Morgan has worked in the field of construction continuously since 1967. He has passed the Broker's License exam, the Professional Home Inspector Institute exams, Advanced Home Inspection exams, National Home Inspector's exam, B-1 ICC Residential Home Inspector Exam and the exam for International code certification. Mr. Morgan owns and operates Jodie Morgan Construction, Inc., which he founded in 1978, and builds residential and commercial projects. He has personal knowledge and experience in forming, framing, roofing, insulation, sheetrock, masonry, trim, cabinetry, painting, remodeling and estimating. Additionally, Mr. Morgan was the President of Sea Side Builders, Inc., which built residential projects, and currently owns and manages J Morgan Builder, LLC which builds or has built commercial projects in Mississippi, Louisiana and Tennessee, along with J Morgan Consulting, LLC which consults, inspects, and provides expert witnesses for construction and inspection matters. Mr. Morgan's construction project experience includes the following:

> Buildings – Industrial factories, office parks, fuel station, fire station, convenience stores, banks, restaurants, hotel, car wash, retail centers, pre-engineered steel

>buildings, structural steel, various medical clinics, dental clinics, schools, gymnasiums, churches, trucking terminals, automotive repair shops, additions to various commercial & residential buildings, national chain stores, tenant build outs, 100's of new homes
>
>Concrete – various structures such as headwalls, pilings, fuel tank supports, highway box culverts, ditch pavings, basements, retaining walls, loading docks, containment walls, truck scales, tank farms, oil change pits, fountains, curbs, inlets, vaults, storm rooms, parking lots & various types of foundations
>
>Other – Subdivision developments, roads, storm sewer, retention ponds, lakes, swimming pools, sport & tennis courts, automated gate entrances, fencing of all kinds, gazebos, decks, insurance fire & storm damage, restoration of historical homes and buildings, log homes
>
>See Exhibit "A" at pg. 1-2.

8. Rule 702 does not require the extreme expertise that the Defendants seem to seek. *See Tesco Corp. v. Weatherford International, Inc.,* 2010 WL 4627807, at *10 (S.D. Tex. Sept. 27, 2010). "A witness qualified as an expert is not strictly confined to his area of practice but may testify concerning related applications; a lack of specialization does not affect the admissibility of the opinion, but only its weight." *Id.* (citing *Trenado v. Cooper Tire & Rubber Co.*, 2009 WL 5061775, at *2 (S.D. Tex. Dec. 15, 2009) (citing *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 176-77 (5th Cir. 1990), abrogated on other grounds by *Little v. Liquid Air. Corp.*, 37 F.3d 1069 (5th Cir. 1996)); *Peteet v. Dow Chemical Co.*, 868 F.2d 1428, 1431 (5th Cir. 1989).

9. Mr. Morgan is competent to testify regarding his observations from the plans provided by Defendants, regarding the reports provided by Defendants, regarding other information provided by Defendants, and regarding his observations of the photographs and other items related to the home which is the subject of this litigation, and regarding the attempted repairs identified in Defendants' documentation and visible in said photographs. Mr. Morgan's testimony regarding these matters is reliable. As previously stated Mr. Morgan has extensive experience in the

construction industry.

10. Plaintiffs were forced to rely upon the defendants, and their integrity in providing appropriate discovery responses, and in providing all documentation which they possess or have access to which would address the history of these buildings including construction and any other work or reports done with respect to the construction problems with the homes or subsequent remediation or repairs which were made. Plaintiffs are at the mercy of the defendants with respect to production of same and Mr. Morgan relied upon the materials that were provided by Defendants in reaching his opinions, with the understanding that the materials provided by Defendants are reliable and complete. Mr. Morgan is entitled to review same and reach an opinion regarding those materials and the information contained therein. His review of those items and subsequent review of the additional supplementation provided by the defendants, including photographs, allow him to use his vast expertise in the construction industry to identify, from a construction sense what he observed and is able to see in the pictures, and what he reads and reviews in the reports.

11. Mr. Morgan's construction expertise is not only for use in reaching opinions related to construction, but also for interpretation and summarization of the documents provided by Defendants with regard to construction, repairs, and other maintenance issues and inspections. To the extent that Defendants have provided information which is accurate, truthful, and complete, Mr. Morgan relied upon such to review and interpret said documents so that this information and material can be explained to laymen and without the need for the jury to review every detail in these reports. After review of same and based upon material provided by Defendants and Plaintiffs as described herein, Mr. Morgan reached the opinion and conclusions identified above and further explained the items that were observed in the photographs and other

documentation he received as it related to Plaintiffs' home. Although such, in itself, may not all constitute opinion testimony, such does require the expertise of a construction expert in order to better describe and explain such items to the jury.

12. Although, when prompted by Defendants, Mr. Morgan indicated that he believed that repairs and remediation seemed slow and he would expect that it could have been handled at a much more accelerated pace, Mr. Morgan did not render a specific opinion regarding same, and he is only able to describe his observations and his understanding of Defendants' records which were produced.

13. As stated in Federal Rule of Evidence 702 "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.  Fed. R. Evid. 702. Mr. Morgan's experience in the construction and inspection industry is extensive and his expertise regarding same should be clear. Should the court determine that any detail is necessary regarding same, Mr. Morgan should be directed to appear at a hearing regarding this Motion and Response so that he may better explain his specific experience. Otherwise, such should be subject to cross-examination and conflicting expert testimony, leaving the credibility and weight of Mr. Morgan's testimony to the fact-finder.

14. Mr. Morgan's technical and specialized knowledge regarding construction, regarding his understanding of the reports, diagrams, and reviews prepared and presented by and on behalf of the defendants, and review of the photographs provided, would help the trier of fact to

understand the evidence so that they may make a better and more accurate determination as to the facts in issue. Based upon the information received and as identified herein, Plaintiffs believe the court will see that the testimony is based upon sufficient facts and data to make such determination as such was based upon the previous findings made by representatives or inspectors retained by Defendants, and the witness's evaluation of same. Mr. Morgan's actual opinion testimony in this matter is very limited in that he is primarily reviewing materials provided by Defendants and summarizing and presenting same, along with his observations of photographs of the subject residence.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that after due proceedings are had, and that upon review of the very specific information to which Mr. Morgan would testify, that the Court deny Defendants' Motion to Exclude the Opinions and Testimony of Joe E. Morgan, Jr.

Respectfully submitted the 14th day of June, 2019.

RUSHING & GUICE P.L.L.C.

By: */s/ R. Scott Wells*
R. SCOTT WELLS MSBN 9456
WILLIAM LEE GUICE III MSBN 5059
MARIA MARTINEZ MSBN 9951
Post Office Box 1925
Biloxi, Mississippi 39533
Phone: (228) 374-2313
Fax: (228) 875-5987
swells@rushingguice.com
bguice@rushingguice.com
mmartinez@rushingguice.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 14th day of June, 2019, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all known counsel of record by operation of the court's electronic filing system.

SO CERTIFIED, this 14th day of June, 2019.

/s/ R. Scott Wells
R. SCOTT WELLS

W:\9295\Stewart\Working\Pleadings\19-0613 Response to [195] Motion to Exclude Morgan.docx